**CARLTON FIELDS**
Michael T. Hensley
Jorkeell Echeverria
180 Park Avenue, Suite 106
Florham Park, New Jersey 07932
Tel: 973.828.2613
Fax: 212.430.5501
MHensley@carltonfields.com
JEcheverria@carltonfields.com

**PARKER POE ADAMS & BERNSTEIN LLP**
Sarah F. Hutchins (*pro hac vice*)
Corri A. Hopkins (*pro hac vice*)
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Tel: 704.335.6639
sarahhutchins@parkerpoe.com
corrihopkins@parkerpoe.com

*Attorneys for Defendant*
*Blackbaud, Inc.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, ET AL.,<br><br>    *Plaintiffs,*<br><br>  v.<br><br>BLACKBAUD, INC., ET AL.<br><br>    *Defendants.* | Civil Action No.  1:24-cv-03993<br><br>Removed from the Superior Court of New Jersey, Morris County, Law Division |

### AMENDED NOTICE OF REMOVAL

Defendant Blackbaud, Inc. ("**Blackbaud**") removes the state court action described below to this Court.  Removal is proper under the Class Action Fairness Act ("**CAFA**"), 28 U.S.C. § 1332(d), 28 U.S.C. §§ 1441(a)-(b), and 28 U.S.C. § 1453, because this is a class action or, alternatively, a mass action, and thus federal jurisdiction is proper.

In the alternative, Plaintiff Atlas Data Privacy Corporation's ("*Atlas*") purported assignments are materially defective and thus, on this basis, when the Complaint was removed to this Court, Atlas lacked standing and the Court lacked subject-matter jurisdiction over Atlas's claims. Accordingly, when Atlas is excluded from the federal jurisdiction analysis, there is complete diversity between the Individual Plaintiffs, on the one hand, and Blackbaud, on the other hand. Under those circumstances, the case is also subject to removal based on diversity jurisdiction under 28 U.S.C. § 1332(a).

## NATURE OF THE CASE

1.　On February 7, 2024, Atlas, as the alleged assignee for the claims of 19,251 individuals (the "*Assignors*" or "*Covered Persons*"), Jane Doe 1, Jane Doe 2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan (collectively, the "*Individual Plaintiffs*" and, with Atlas, alleged "*Plaintiffs*"), commenced an action against 21 defendants ("*Defendants*") in the Superior Court of New Jersey, Morris County, Law Division, entitled *Atlas Data Privacy Corporation, et al. v. Blackbaud, Inc., et al.*, No. MRS-L-000243-24.

2.　Service on Blackbaud was effectuated on February 22, 2024.

3.　In compliance with 28 U.S.C. § 1446(b)(1), Blackbaud's Notice of Removal was filed on March 19, 2024, and thus was filed within thirty (30) days after

service of the Complaint upon Blackbaud, rendering removal timely.[1]  In compliance with 28 U.S.C. § 1446(b)(3), this Amended Notice of Removal is "filed within 30 days after receipt" by Blackbaud of a copy of the "motion, order or other paper" from which it could be first ascertained that there is an additional basis for federal jurisdiction with respect to complete diversity between the parties.[2]

## LEGAL STANDARD

4.    "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)).  "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart*, 574 U.S. at 87.

5.    "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to simplify the pleading requirements for removal and to clarify that courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading."  *Id.*, 574 U.S. at 87 (citation, quotation marks, and brackets omitted).  Accordingly, "[a] statement 'short and plain' need not contain evidentiary submissions."  *Id.*, 574 U.S. at 84.

---

[1] By removing this action, Blackbaud does not waive any available defense or rights (all of which are reserved).  Nor does Blackbaud concede the veracity of any allegation pleaded against it. *Faltaous v. Johnson & Johnson*, No. CIV.A. 07-1572JLL, 2007 WL 3256833, at *8 (D.N.J. Nov. 5, 2007) ("Defendant need not concede aspects of the complaint in order to prove federal jurisdiction.").

[2] In its original Notice of Removal, Blackbaud did not seek removal on the basis of complete diversity, and thus submits this Amended Notice of Removal to reflect complete diversity as an additional or alternative basis for federal jurisdiction.

## PARTIES

6.    Plaintiff Atlas is incorporated in Delaware and "with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302." Compl., ¶ 25.[3] Atlas alleges that it "asserts claims against Defendants as the assignee of the claims of approximately 19,251 individuals who are all 'covered persons' under Daniel's Law[.]" *Id.*, ¶ 26.  The Assignors are comprised of "individuals who reside, work or had previously resided or worked in New Jersey, and qualify as 'covered persons' as that term is defined against Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law." *Id.*, ¶ 27.

7.    The allegations in the Complaint, along with statements in Plaintiffs' Consolidated Motion to Remand (*see* DE 33) and related documents, clarify that the Individual Plaintiffs are all citizens of the State of New Jersey.  *See* Compl., ¶¶ 15-24 (alleging that each of the Individual Plaintiffs are or were law enforcement officers in the State of New Jersey).  For example, in the Consolidated Motion to Remand, Plaintiffs state as follows:

> The Individual Plaintiffs are all New Jersey law enforcement officers that have experienced threats and, in some instances, acts of violence targeting them and their families as a result of their public service. Plaintiff Patrick Colligan is a veteran of the Franklin Township Police Department in Somerset, New Jersey, and until recently served as the president of the New jersey [*sic*] State PBA. Plaintiff Jane Doe-1 is a police officer working and residing in northern New Jersey. Plaintiff Jane Doe-2 is a veteran correctional police officer living in northern New Jersey. Plaintiff Edwin Maldonado, now retired, was an officer in the Plainfield, New Jersey Police Department. Plaintiffs Scott Maloney and

---

[3] Blackbaud accepts as true (as it must at this stage) the allegations in the Complaint, solely for the purpose of establishing federal jurisdiction.  Blackbaud reserves all rights to dispute all allegations against it in the future.

Justyna Maloney are Rahway, New Jersey police officers and a married couple residing together in New Jersey. Plaintiff William Sullivan is a veteran of the New Jersey Department of Corrections and the President of New Jersey PBA Local 105, the association representing correctional police officers from the Department of Corrections and the Juvenile Justice Commission.

(DE 33-1 at 20-21 (citations omitted).)

8.    Defendant Blackbaud is incorporated in Delaware with a principal place of business in Charleston, South Carolina.

## UNDERLYING ALLEGATIONS

9.    Plaintiffs allege that "Defendants" violated N.J.S.A. 47:1A-1, *et seq*., and N.J.S.A. 56:8-166.1 ("***Daniel's Law***"), Compl., ¶ 8, because 19,251 Assignors and the Individual Plaintiffs allegedly asked "Defendants" to "cease disclosure of their home address and/or unpublished home telephone number." Compl., ¶ 57.    Plaintiffs further allege, "***[u]pon information and belief***, [that] Defendants did not cease the disclosure" within ten (10) business days of Plaintiffs' purported notice.  *Id.*, ¶¶ 60, 58 (emphasis added).

## FEDERAL JURISDICTION

### I.    **This Court Has Jurisdiction Under CAFA**

10.    This Court has jurisdiction because this matter is either a "class action" or a "mass action" under CAFA.

11.    "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014) (citing *Standard Fire Ins. Co.*, 568 U.S. 588, 592, 133 S.Ct. 1345, 1350, 185 L.Ed.2d 439 (2013)).    Accordingly,

"CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Dart*, 574 U.S. at 89 (quoting S.Rep. No. 109–14, p. 43 (2005)).

12.    Practically, "CAFA dramatically expanded the role of the federal judiciary in class action litigation, and expressed a clear preference for qualifying class actions to be entertained in federal forums." *Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d 585, 589 (D.N.J. 2016).  Because "the language of CAFA favors federal jurisdiction over class actions," "'no antiremoval presumption attends cases invoking CAFA[.]'" *Portillo*, 169 F. Supp. 3d at 592 n.9 (quoting *Dart*, 574 U.S. at 89).

### A.  Class Action Requirements Under CAFA

13.    "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ('numerosity requirement)." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B), (6)).  In addition, to be considered a "class action" under CAFA, the suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]"  28 U.S.C. § 1332(d)(1)(B).

14.    This suit satisfies all of CAFA's requirements for federal jurisdiction over a class action because (1) there is minimal diversity between the parties; (2) the

aggregate amount-in-controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit was filed under a state-law analogue to Rule 23.

### i. Minimal Diversity

15.    CAFA requires minimal diversity among the parties, meaning, at least one class member must be a citizen of a different state from at least one defendant. 28 U.S.C. § 1332(d)(2).

16.    Under CAFA, a corporation is a citizen of the state "by which it has been incorporated" and the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

17.    In the Complaint, Plaintiffs allege that, at a minimum, Plaintiffs Doe 1, Doe 2, and the Maloneys are citizens of the State of New Jersey.  Compl., ¶¶ 15, 16, 18.  Further, the Complaint alleges that the Assignors "include individuals who reside, work or had previously resided or worked in New Jersey[.]"  Compl., ¶ 27.

18.    Defendant Blackbaud is organized under the laws of Delaware and its principal place of business is in South Carolina.

19.    Because Blackbaud's citizenship (Delaware and South Carolina) is different from the citizenship of at least four Plaintiffs (New Jersey), the minimal diversity requirement is satisfied.

20.    That the Complaint names twenty unidentified Defendants, in addition to Blackbaud, *see* Compl., ¶ 38, has no impact on diversity for CAFA purposes. *Dintelman v. Kellogg Co.,* No. CIV. 09-945, 2010 WL 520284, at *2 n. 1 (S.D. Ill. Feb. 12, 2010) ("[B]ecause the CAFA requires only minimal diversity of citizenship the

Court does not inquire as to the citizenship of the 1–100 Does named as Defendants[.]").

### ii. Aggregate Amount-in-Controversy

21.    CAFA requires that the amount-in-controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2).

22.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89; *Vaccaro v. Amazon.com.dedc, LLC*, No. CV 18-11852, 2019 WL 1149783, at *3 (D.N.J. Mar. 13, 2019) (same principle).[4]

23.    In the Third Circuit, federal jurisdiction is proper "where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," unless "it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount."  *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (emphasis in original).

### a. *Actual Damages*

---

[4] Blackbaud does not concede that it is liable to Plaintiffs for, or that Plaintiffs are entitled to, any amount or other relief alleged in the Complaint. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."; *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ( "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.")).

24.     In the Complaint, Plaintiffs seek to recover, among other things, "actual damages, not less than liquidated damages under Daniel's Law, at '$1,000 for each violation[.]'"  Compl., p 22, ¶ B; *see also* Compl., ¶ 50 (citing Part 3(c)(1)).

25.     According to the Complaint, Defendants allegedly did not comply with Daniel's Law with respect to the rights of each of the 19,251 Assignors, Doe 1, Doe 2, Maldonado, the Maloneys, Colligan, Andreyev, and Sullivan.  *See, e.g.,* Compl., ¶¶ 26, 51-55.  That means, as to Blackbaud alone, the Complaint seeks to recover for 19,259 alleged statutory violations valued at $1,000 each, totaling $19,259,000 in "actual" damages.

26.     Further, in addition to Blackbaud, Plaintiffs brought this suit against "Richard Roes 1-10 and ABC Companies 1-10," *see* Compl., ¶ 38—totaling 21 Defendants, including Blackbaud.  Thus, according to the Complaint, each of the 19,259 individual claims in the Complaint seeks to recover "not less than" $1,000 in damages from each of the 21 Defendants.  Put differently, the Complaint alleges 404,439 total monetary claims, valued (according to Plaintiffs) at $1,000 per violation.  Thus, the total "actual" damages amount alleged in the Complaint clearly exceeds the $5,000,000 threshold for the aggregate amount-in-controversy.

### b. Punitive Damages

27.     The Complaint also seeks punitive damages, which contribute to the aggregate amount-in-controversy.  Compl., p 22, ¶ C.

28.     "When determining the amount in controversy, punitive damages . . . are part of the amount in controversy calculation." *Atl. Util. Trailer*

*Sales Inc. v. Harco Nat'l Ins. Co.*, No. CV 20-02349, 2020 WL 3287129, at *2 (D.N.J. June 18, 2020) (citing *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) ("[Plaintiff] is seeking punitive damages, which we must consider when calculating the amount in controversy.")).

29.    "Under New Jersey law, punitive damages are capped at 'five times the liability of that defendant for compensatory damages or $350,000, whichever is greater.'" *Harco*, No. CV 20-02349, 2020 WL 3287129, at *2 (quoting N.J. Stat. Ann. § 2A:15–5.14 (2014)).  "For purposes of the amount in controversy calculation, courts assume this maximum 'five times' multiplier." *Harco*, No. CV 20-02349, 2020 WL 3287129, at *2 (citing *Frederico*, 507 F.3d at 199).

30.    As explained above, as set forth in the Complaint, each of the 19,259 claims alleged could result in an award of "actual damages, [] not less than liquidated damages computed at the rate of $1,000 for each violation of this act[.]" Compl., ¶ 50 (quoting Part 3(c)(1)).

31.    According to the Complaint, Daniel's Law authorizes punitive damages in certain circumstances.   Compl., ¶ 50 (quoting Part 3(c)(2)).   For amount-in-controversy purposes, the "maximum 'five times' multiplier" reflects the possibility of punitive damages in the amount of five times the amount of actual damages, or an additional $5,000 per claim.

32.    Thus, the actual damages ($1,000) and corresponding punitive damages ($5,000) could total $6,000 for each claim, according to the allegations in the Complaint.   Each claim was brought against 21 Defendants (multiply $6,000 times

21 Defendants), resulting in potential actual and punitive damages of $126,000 for each Assignor's claim.

33.    Further, the Complaint alleges that it involves the claims of 19,259 individuals.   Multiplied by $126,000 per claim, the aggregate actual and punitive damages alleged in the Complaint far exceed $5,000,000.

### c. Attorneys' Fees

34.    The Complaint also seeks attorneys' fees, which further contribute to the aggregate amount-in-controversy.  Compl., p 22, ¶ D.

35.    "When determining the amount in controversy, . . . attorney's fees are part of the amount in controversy calculation." *Harco*, No. CV 20-02349, 2020 WL 3287129, at *2 (citing *Frederico*, 507 F.3d at 199).  The Third Circuit has awarded attorneys' fees of 30% of a class judgment.  *See Frederico*, 507 F.3d at 199 (noting that, in determining whether the CAFA threshold has been met, "[f]ees could be as much as thirty percent of the judgment").  Thus, the addition of attorneys' fees to the amount-in-controversy increases the amount for actual and punitive damages by another 30%.

36.    For example, as to just the actual damages estimated at $1,000, multiplied by 19,259 claims, the corresponding attorneys' fees valued at 30% of a class action judgment would total $25,036,700.

### d. Injunctive and Equitable Relief

37.    Plaintiffs also seek equitable relief in the Complaint, including a permanent injunction compelling compliance with Daniel's Law and "the

11

appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law." Compl., p 22, ¶¶ E-F. These additional costs would further increase the amount-in-controversy above the $5,000,000 threshold.

38.    For all the foregoing reasons, it is evident based on the Complaint's allegations, and reasonable extrapolations therefrom, that the $5,000,000 aggregate amount-in-controversy requirement is satisfied in this matter.

### iii.    Class Action Numerosity

39.    CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" must be at least 100 members. 28 U.S.C. § 1332(d)(5). In counting such members, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D). The numerosity requirement, for jurisdictional purposes, is satisfied here.

40.    "[T]he Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 06-0620, 2020 WL 5211035, at *10 (E.D. Pa. Sept. 1, 2020) (citing *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 251-52 (3d Cir. 2016)).

41.    Here, the proposed class consists of 19,259 members—Atlas as assignee for 19,251 Assignors, Doe 1, Doe 2, Maldonado, the Maloneys, Colligan, Andreyev, and Sullivan. Thus, the number of proposed class members exceeds the 100 members

necessary to satisfy the numerosity requirement for the purposes of CAFA jurisdiction.

### iv.    Applicable Law

42.    Under CAFA, "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" 28 U.S.C. § 1332(d)(1)(B).

43.    The analogous state law need not be pled in the complaint to satisfy CAFA.  That is because, if courts "interpreted 'any civil action filed under Rule 23' or a state-law analogue to refer only to cases that specifically mention Rule 23 or a state-law analogue," then "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Employers Mutual Casualty Company, et al.*, 845 F.3d 891, 901 (8th Cir. 2017).  "[A]llowing class-action plaintiffs to avoid federal jurisdiction simply by omitting explicit reference to the class-action rule they intend to proceed under would promote the kind of procedural gaming CAFA was enacted to prevent."  *Id.*; *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").

44.    Accordingly, "[i]f a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify

whether the case is ***in substance*** an interstate class action." *Erie Insurance Exchange, et al. v. Erie Indemnity Company*, 68 F.4th 815, 819 (3d Cir. 2023) (emphasis added). The U.S. Supreme Court has warned "that courts must be careful not to 'exalt form over substance' when determining whether a case satisfies CAFA's jurisdictional requirements.'" *Id.*, at 819-20 (quoting *Standard Fire*, 568 U.S. at 595).

45.    Here, the Complaint is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit." *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where plaintiff, an assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction).

46.    In the Complaint, Plaintiffs allege that Atlas is an assignee of 19,251 Assignors.    *See, e.g.*, Compl., ¶ 26. Under Daniel's Law, a "covered person's assignee . . . may bring a civil action in the Superior Court." N.J.S.A. 56:8-166.1(b). An "[a]ssignee" under Daniel's Law "means a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for a violation of subsection a. of this section." N.J.S.A. 56:8-166.1(d).

47.    Plaintiffs' decision not to cite a Rule 23-analogue in the Complaint does not "disguise the true nature of the suit." *Addison Automatics*, 731 F.3d at 742.

48.    Atlas can only bring this suit in its capacity as the assignee for the claims of 19,251 Assignors. *See* N.J.S.A. 56:8-166.1(b) *and* (d).    In that capacity, Atlas purports to bring claims on behalf of 19,251 individuals (numerosity), *see supra* ¶¶ 45-47; alleges commonality among the claims (*see* Compl., ¶¶ 44-55 ("Facts

14

Common to All Counts")); and purports to present this case as one in which joinder of nearly 20,000 is not impracticable or impossible.[5]  Further, although Plaintiffs do not cite any joinder rule, the Complaint does not demonstrate how Plaintiffs could join 19,259 claims in a single suit, absent the class action mechanism.

49.    Courts have held that a state-law analogue statute or rule is, in effect, a class action, where the rule "resembles" an analogue of Rule 23.  *See Pac. Coast Fed'n of Fishermen's Associations, Inc. v. Chevron Corp.*, No. 18-CV-07477, 2023 WL 7299195, at *1–3 (N.D. Cal. Nov. 1, 2023) ("The complaint thus pleads a representative action authorized by section 382 of the California Code of Civil Procedure," which "allows a plaintiff to sue and seek relief on behalf of absent parties," and thus "resembles a damages class action under Rule 23 of the Federal Rules of Civil Procedure.").

50.    Plaintiffs appear to have brought their claims under N.J. Ct. R. 4:27-1, 4:28-1, 4:32, *et seq.*, and Daniel's Law.  Thus, all of the requirements for CAFA jurisdiction over a class action have been met.

### B. <u>Mass Action Requirements Under CAFA</u>

51.    In the alternative, or in addition, to finding that this is a class action under CAFA, removal is proper because the instant case is a "mass action" under CAFA.

52.    "Congress created the mass action in 2005, when it passed the Class Action Fairness Act (CAFA), a mostly jurisdictional statute." *Robert D. Mabe, Inc. v.*

---

[5] Blackbaud does not concede that Plaintiffs established any element of class certification.

*OptumRX*, 43 F.4th 307, 318 (3d Cir. 2022). "CAFA's drafters feared that large-scale state litigation—deemed mass actions and brought under non-class joinder and consolidation rules—would evade CAFA's removal provisions simply because [such] litigation was not pursued under class action rules. [] So Congress included mass-action provisions in CAFA." *OptumRX*, 43 F.4th at 318 (citations and quotation marks omitted).

53.    CAFA defines a "mass action" as

> any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [§ 1332(a)].

28 U.S.C. § 1332(d)(11)(B)(i). In short, "mass actions are deemed to be class actions removable under 28 U.S.C. § 1332(d)(2)–(10) if they otherwise meet the provisions of those paragraphs." *OptumRX*, 43 F.4th at 319 (citing 28 U.S.C. § 1332(d)(11)(A)).

54.    "In extending CAFA to large individual state court cases that are functionally indistinguishable from class actions, the mass action provision prevents plaintiffs' counsel from avoiding CAFA's expanded federal jurisdiction by simply choosing not to seek class certification." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1198 n.32 (11th Cir. 2007) (quoting S.Rep. No. 109–14, at 47 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 44 (noting that "mass actions are simply class actions in disguise")).

55.    Thus, federal jurisdiction exists under CAFA for a mass action that satisfies (1) the class action requirements of (a) minimal diversity and (b) the

$5,000,000 *aggregate* amount-in-controversy; (2) numerosity for a mass action; and (3) the $75,000 *individual* amount-in-controversy requirement.

### i.    Class Action Requirements

56.    "[U]nder § 1332(d)(11), a mass action 'will be treated as a class action for jurisdictional purposes. Thus, if such a civil action met the other diversity jurisdictional prerequisites set forth for class actions in [CAFA], that civil action would be subject to federal jurisdiction.'" *OptumRX*, 43 F.4th at 324 (quoting S. Rep. No. 109-14 at 46 (2005)).

57.    As explained above, there is minimal diversity between the parties, *see supra* ¶¶ 21-26, and the aggregate amount-in-controversy exceeds $5,000,000, *see supra* ¶¶ 27-44.  Thus, the class-action requirements for mass actions under CAFA are satisfied.

### ii.    Mass Action Numerosity

58.    Under CAFA, "the term 'mass action' means any civil action . . . in which **monetary relief claims of 100 or more persons** are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact[.]" 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

59.    "The question is not whether 100 or more plaintiffs answer a roll call in court, but whether the '***claims***' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added).  "Where a single complaint joins more than ***100 separate claims*** involving common questions of law and fact, there is a presumption that those

plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (emphasis added).

60.     Here, Atlas alleges that it is the assignee for "monetary relief claims of 100 or more persons," 28 U.S.C. § 1332(d)(11)(B)(i)—specifically, the "monetary relief claims" of 19,251 Assignors.  *See* Compl., ¶¶ 51-55. In addition, Doe 1, Doe 2, Maldonado, the Maloneys, Colligan, Andreyev, and Sullivan also each allege "monetary relief claims" and thus add eight additional such claims to the mass-action numerosity calculus.

61.     In the Third Circuit,

> [i]t is blackletter law that "the assignee steps into the shoes of the
> assignor." 29 Williston on Contracts § 74:56 (4th ed. 1999) ("Simply
> stated, the assignee steps into this pair of the assignor's shoes
> absolutely, and, if the shoes are dirty, then that dirt sullies the assignee
> no less than it did the assignor."). As a result, "[a]n assignee's right
> against the obligor is subject to all ... defenses thereto...." Restatement
> (First) of Contracts § 167(1) (1932). These defenses include not only
> defenses to the merits of the claim, but defenses based on where and
> how the claims may be prosecuted.

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 06-0620, 2020 WL 5211035, at *11 (E.D. Pa. Sept. 1, 2020).

62.     Accordingly, "the Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Id.*, at *10 (citing *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 251-52 (3d Cir. 2016)); *In re Modafinil*, 837 F.3d at 251, *as amended* (3d Cir. Sept. 29, 2016) ("[P]artial assignees are appropriately considered to be members of a class."); *see also id.* at 252 ("*Fine Paper Litigation* [, 632 F.2d 1081, 1089 (3d Cir.

1980)] envisioned the class action mechanism as a proper tool for partial assignees to participate in the lawsuit[.]").

63.     This case does not involve one plaintiff suing on behalf of a group of unnamed individuals. *See, e.g., Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 134 S. Ct. 736, 187 L. Ed. 2d 654 (2014) (involving *parens patriae* action brought by state attorney general on behalf of state's citizens); *Erie Insurance Exchange, et al. v. Erie Indemnity Company*, 68 F.4th 815 (3d Cir. 2023) (involving unincorporated association bringing suit "to benefit all members of" the association).

64.     Rather, in this case, Atlas brings each claim for relief on behalf of 19,251 separate, allegedly identified Assignors, *see, e.g.*, Compl., ¶ 51, along with eight additional individuals, *id.*, ¶¶ 15-24.  More precisely, Atlas only has standing to sue (if at all) in its alleged capacity as the assignee for each individual Assignor.  Because Atlas "steps into the shoes of" each Assignor in this suit, 29 Williston on Contracts § 74:56, Atlas's "right against" any Defendant is "subject to all defenses" that any Defendant may have had against any Assignor, including "defenses based on ***where*** and ***how*** the claims may be prosecuted."  *Winn-Dixie Stores*, No. 06-0620, 2020 WL 5211035, at *11 (citing Restatement (First) of Contracts § 167(1) (1932)) (ellipses omitted; emphasis added).

65.     That Atlas did not name each of the 19,251 Assignors in the case caption does not change the fact that Atlas is not suing on its individual behalf, but is entitled

to bring each claim alleged in the Complaint only as the assignee for a corresponding and specific Assignor.[6]

66.    Thus, because Atlas is suing to recover for the "monetary relief claims of 100 or more persons" in a single lawsuit, 28 U.S.C. § 1332(d)(11)(B)(i), the mass-action numerosity element is satisfied.

### iii.    Individual Amount-in-Controversy

67.    CAFA's plain language states that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [of more than $75,000]." *Haley v. AMS Servicing, LLC*, No. CIV. 13-5645, 2014 WL 2602044, at *4 (D.N.J. June 11, 2014) (quoting 28 U.S.C. § 1332(d)(11)(B)(i)).

68.    Courts interpreting this requirement have held that federal jurisdiction exists in a mass action under CAFA where "Defendants have shown that ***at least one*** individual has a claim where the amount in controversy is greater than $75,000." *Haley*, 2014 WL 2602044, at *4–5 (emphasis added) ("Defendants have also shown that some number of individual Plaintiffs place greater than $75,000 at issue. Thus, there is CAFA jurisdiction over this action; Plaintiffs' motion to remand the action is denied.").

---

[6] Blackbaud recognizes that it may have been appropriate for Plaintiffs to file their pleading under seal, had Plaintiffs chosen to expressly list the Assignors, but Plaintiffs declined to take such protective measures here. *See, e.g.*, Local Civ. Rule 5.3 (Confidentiality Orders and Restricting Public Access Under CM/ECF), Local Civil and Criminal Rules of the United States District Court of the District of New Jersey (rev. Mar. 1, 2024).

69.    Here, *each* alleged claim appears to exceed $75,000.  As discussed above, the Complaint alleges that each of the 19,251 Assignors' rights were violated by each of the 21 Defendants under Daniel's Law.  Thus, at a minimum, the Complaint alleges that each Assignor's claim warrants recovery of up to $1,000 in "actual" damages as to each of the 21 Defendants (*i.e.*, $21,000 in statutory damages per Assignor).

70.    Also as explained above, claims for "punitive damages are capped at 'five times the liability of that defendant for compensatory damages or $350,000, whichever is greater.'" *Harco*, No. CV 20-02349, 2020 WL 3287129, at *2 (quoting N.J. Stat. Ann. § 2A:15–5.14).  "For purposes of the amount in controversy calculation, courts assume this maximum 'five times' multiplier." *Id.* (citing *Frederico*, 507 F.3d at 199).

71.    Thus, for each claim by each Assignor against each Defendant, the Complaint seeks $1,000 in compensatory damages plus $5,000 in punitive damages. Six thousand dollars multiplied by each of the 21 Defendants means each Assignor's claim is valued at $126,000 for statutory damages and punitive damages alone. Moreover, as explained above, the Complaint seeks attorneys' fees and injunctive relief, which further increases the individual amount-in-controversy for each alleged claim. *See supra* ¶¶ 40-44.

## C. **None of the CAFA Exceptions Apply**

72.    CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction for class actions. 28 U.S.C.

§ 1332(d)(3)-(4).  None of these exceptions applies here.  Each CAFA exception requires, as a starting point, an in-state defendant. 28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception), or requiring the "primary defendant" to be an in-state one ("home state" and discretionary exceptions)).

73.    Here, as shown above, Blackbaud is not a citizen of New Jersey, and the citizenship of the unidentified Defendants is disregarded, so none of the CAFA exclusions apply.

74.    Further, none of the exceptions for federal jurisdiction over a "mass action" apply here.  28 U.S.C. § 1332(d)(11)(B)(ii).  Specifically, none of the claims herein were joined upon motion of a defendant (subsection II), the claims are not asserted on behalf of the general public (subsection III), and the claims in the Complaint have not been consolidated or coordinated solely for pretrial proceedings (subsection IV).

75.    In addition, the claims in this action do not arise from a single "event or occurrence" in New Jersey that allegedly resulted in injuries in New Jersey or in States contiguous to New Jersey (subsection I).  Rather, first, the Complaint alleges that "**each** of the Individual Plaintiffs and all of the Covered Persons [*i.e.*, the Assignors] . . . sent Defendants written nondisclosure requests (via email)[,]" Compl., ¶ 51 (emphasis added), amounting to 19,259 separate alleged events or occurrences. Second, Blackbaud did not receive any alleged "notification" in New Jersey (as Blackbaud is not a citizen of New Jersey), and thus no "event or occurrence" took

22

place in New Jersey.  Third, the Assignors include individuals who "had previously resided or worked in New Jersey[.]"  Compl., ¶ 27.  Thus, because these individuals previously resided (but no longer reside) in New Jersey, the alleged notifications were not all sent *from* New Jersey.  Thus, this exception does not apply either.

76.    Accordingly, none of the class or mass action exceptions to CAFA jurisdiction apply here.

## II.    **Alternatively, this Court Has Diversity Jurisdiction.**

77.    On May 3, 2024, Plaintiffs filed a Consolidated Motion to Remand that impacts 39 of the 71 related cases presently removed to this Court.  Attached as exhibits to Plaintiffs' Motion were three documents that had not previously been provided to Blackbaud—specifically, the following:

- DE 33-2 - Certification of Rajiv D. Parikh in Support of Plaintiffs' Consolidated Motion to Remand ("***Parikh Certification***");

- DE 33-3 at 51-53 (Exhibit D) - Assignment Confirmation Exemplar ("***Assignment Confirmation***"); and

- DE 33-3 at 54-68 (Exhibit E) - Atlas Daniel's Law Service Terms (Feb. 4, 2024) ("***2024 Service Terms***").

The Parikh Certification describes the Assignment Confirmation as "an exemplar assignment of claims issued between a covered persons [*sic*] and Atlas." (DE 33-2, ¶ 5.)  The Parikh Certification describes the 2024 Service Terms as "Atlas's Service Terms governing the terms of service between covered persons and Atlas,"

and states that the foregoing terms were "last updated February 4, 2024." (DE 33-2,

¶ 6.)[7] The 2024 Service Terms state as follows:

> **(ii) Assignments - Actions where Atlas or its affiliates are the plaintiff.**
>
> In certain circumstances Atlas may in its discretion determine that an efficient method of prosecuting takedown notice enforcement actions is through civil litigation whereby individual claims are aggregated and prosecuted by Atlas or its affiliates. **To this end, upon a written notice from Atlas (which may be sent to you by email or within the Atlas application) which shall both trigger and confirm your legal assignment to Atlas or an affiliate of Atlas (as applicable, the "Assignee") of your right to bring civil enforcement actions for violation of your rights under the Act in connection with one or more of your takedown notices delivered through the Atlas Services (each such notice an "Assignment Confirmation"), you shall be deemed, upon your receipt of such Assignment Confirmation, to have irrevocably assigned to the Assignee all of your rights to bring a claim (and seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of your rights under the Act with respect to the takedown notices covered by the Assignment Confirmation and following such assignment, the Assignee will have the exclusive right to bring such civil enforcement actions anywhere in the world with respect to those takedown notices covered by the Assignment Confirmation. To the extent that the Assignee requires further written confirmation of such assignment(s), you hereby irrevocably appoint Atlas as your attorney-in-fact to execute any such further written assignments or confirmations on your behalf, and such appointment is coupled with an interest**. Atlas affiliates serving as Assignees shall be deemed third-party beneficiaries of these Terms and may enforce them in their own right.

(DE 33-3, p 60 (emphasis in original).)

---

[7] The prior versions of the Daniel's Law Service Terms have not yet been produced and Blackbaud reserves all rights to amend and/or supplement this Amended Notice of Removal to include information flowing from any documents or information provided in discovery or otherwise.

78.    The Assignment Confirmation states that the recipient "previously agreed under Atlas' Daniel's Law Service Terms (the 'Terms') that upon receipt of written notice from Atlas (an 'Assignment Confirmation') you will irrevocably assign to Atlas or a designated affiliate of Atlas (the 'Assignee') the exclusive right to civil enforcement of all claims under [Daniel's Law.]"   (DE 33-3 at 52.)   Further, the Assignment Confirmation states as follows:

> This writing shall constitute the Assignment Confirmation under the Terms with respect to the above-referenced Assigned Claim, and ***shall trigger and confirm Your irrevocable assignment*** to Assignee as of the Effective Date of all of Your rights to bring civil enforcement actions ((including the rights to seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of Your rights under the Act with respect to the Assigned Claim and following such assignment, the Assignee will have the exclusive right to bring such civil enforcement actions anywhere in the world with respect to the Assigned Claim. Assignee will share proceeds from enforcement of the Assigned Claim pursuant to the Terms.

(*Id.*, at 52-53 (emphasis added).)

79.    Thus, both the 2024 Service Terms and the Assignment Confirmation state that the alleged assignments were not "trigger[ed]" or "confirm[ed]" until the Assignment Confirmation was received by an alleged Covered Person.

80.    The Assignment Confirmation Exemplar attached to Plaintiffs' Consolidated Motion to Remand is dated February 8, 2024.  (DE 33-3 at 52.)

81.    The instant suit against Blackbaud was filed on February 7, 2024—the day before the alleged assignment occurred, according to the Assignment

Confirmation Exemplar.[8]  (*See* DE 1-1 (State Court Complaint against Blackbaud, file-stamped on February 7, 2024).)

82.    "A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (reversing trial court, holding that plaintiff lacked standing to sue where the assignment of rights occurred after the suit was filed, and dismissing the complaint); *Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S. Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993) (discussing "the longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought.") (citation omitted).[9]

83.    Because the Assignment Confirmation Exemplar reflects that the Assignment Confirmations were sent after the Complaint was filed on February 7, 2024, the alleged Assignors had not assigned their claims to Atlas when the Complaint was filed.  Under those circumstances, it is possible that the alleged Assignors did not know that Atlas had filed a lawsuit on their behalf until (at the earliest) *after* this lawsuit had been filed.

---

[8] The Assignment Confirmation Exemplar, dated February 8, 2024, purports to have been sent in connection with "Data Broker: Intelius (intelius.com)."  (DE 33-3 at 52.)  The complaint against Intelius, LLC, was filed in New Jersey State court on February 7, 2024—the same date that the Complaint against Blackbaud was filed, and the day before the Assignment Confirmation related to Intelius was sent.  *See Atlas Data Privacy Corporation, et al. v. Peopleconnect, Inc., et al.*, 1:24-cv-04227 (D.N.J.) (Docket Entry 22-1 at 28-66 (Intelius State Court Complaint)). While Blackbaud has not yet received copies of all of the Assignment Confirmations related to takedown notices that were allegedly sent to Blackbaud, the untimely Assignment Confirmation Exemplar strongly suggests that the relevant Assignment Confirmations were sent after this suit was filed.

84.     Because there was no proper assignment to Atlas when the lawsuit was filed, the Court lacks standing with respect to Atlas's claims.  *See, e.g.*, *US Fax L. Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007) ("If a valid assignment confers standing, an invalid assignment defeats standing if the assignee has suffered no injury in fact himself."); *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 664 F. Supp. 3d 635, 649 (E.D. Va. 2023) (same); *PDVSA U.S. Litig. Tr. v. Lukoil Pan Americas LLC*, 372 F. Supp. 3d 1353, 1359 (S.D. Fla. 2019), *aff'd sub nom. PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC*, 991 F.3d 1187 (11th Cir. 2021) ("[I]f the [alleged assignment] is inadmissible or void, Plaintiff cannot establish that it suffered an injury in fact sufficient to establish constitutional standing."); *MSP Recovery, LLC v. Allstate Ins. Co.*, 276 F. Supp. 3d 1311, 1315 (S.D. Fla. 2017) (holding that the alleged assignment to Plaintiff-MSP was invalid and thus that "MSP did not have standing when it filed this suit," and dismissing the suit).

85.     The failure to obtain assignments before filing suit cannot be cured after filing suit.  "[N]unc pro tunc assignments are not sufficient to confer retroactive standing." *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384 (Fed. Cir. 2015) (citation omitted) (patent context); *Valjakka v. Netflix, Inc.*, No. 22-CV-01490, 2024 WL 88001, at *4 (N.D. Cal. Jan. 8, 2024) (quoting *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072–73 (Fed. Cir. 2020)) ("[T]o have statutory standing under [the Patent Act], the 'plaintiff must [ ] have legal title to the patent or patent application' before filing suit."); *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1317 (11th Cir. 2020) ("[I]f MSPRC in fact had a

defective assignment, MSPRC was well positioned to cure the technical defect and *refile* its case with the same claims.") (emphasis added).[10]

86.    Thus, for the purposes of a jurisdictional analysis only, the only proper parties to the Complaint at the time the lawsuit was filed were the Individual Plaintiffs and Blackbaud.

87.    Accordingly, for purposes of jurisdiction, the proper parties to the Complaint are completely diverse.  The Individual Plaintiffs are all citizens of New Jersey.  Blackbaud is a citizen of South Carolina and Delaware.  Moreover, for all of the reasons stated hereinabove, the amount-in-controversy is met with respect to the Individual Plaintiffs.  Thus, this Court has diversity jurisdiction over this suit under 28 U.S.C. § 1332(a).

## III.    All Other Removal Requirements Have Been Met

88.    Attached hereto as Exhibit A is "a copy of all process, pleadings, and orders served upon" Blackbaud in this action.  28 U.S.C. § 1446(a).

89.    This Court is part of the district and division within which this action was filed. 28 U.S.C. § 1446(a).

———————————————

[10] Courts have explained the rationale for prohibiting retroactive assignments to cure standing failures.  *Nat'l Wastewater Sys., Inc. v. Smith*, No. CIV-10-1085, 2011 WL 1667478, at *3 (W.D. Okla. May 3, 2011) (citations omitted):

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

90.    Promptly after filing its original Notice of Removal, Blackbaud caused a true and correct copy of the same to be filed with the Clerk of the Court for the Superior Court of New Jersey, Morris County, where the case was filed, pursuant to 28 U.S.C. § 1446(d), along with a Notice of Filing of Notice of Removal, a copy of which is attached hereto as <u>Exhibit B</u>.

91.    Blackbaud reserves the right to amend or supplement this Amended Notice of Removal in the event that additional bases or theories of federal jurisdiction are revealed in discovery or otherwise.

WHEREFORE, for all the foregoing reasons, Blackbaud respectfully requests this Court to assume full jurisdiction over this action as provided by law.

Dated: May 13, 2024

By:    /s/ Michael T. Hensley
Michael T. Hensley, Esq.
**CARLTON FIELDS, P.A.**
180 Park Avenue
Florham Park, New Jersey 07932
Tel: 973.828.2600
mhensley@carltonfields.com
*Attorneys for Defendant*
*Blackbaud, Inc.*

**Parker Poe Adams & Bernstein LLP**
Sarah F. Hutchins (pro hac vice)
Corri A. Hopkins (pro hac vice)
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Tel: 704.335.6639
sarahhutchins@parkerpoe.com
corrihopkins@parkerpoe.com

## CERTIFICATE OF SERVICE

I, Michael T. Hensley, Esq., counsel for Defendant Blackbaud, Inc. hereby certify that a true and accurate copy of within Amended Notice of Removal were served upon all counsel of record via electronic filing on May 13, 2024.

By:     /s/ Michael T. Hensley
        Michael T. Hensley, Esq.
        **CARLTON FIELDS, P.A.**
        180 Park Avenue
        Florham Park, New Jersey 07932
        Tel: 973.828.2600
        *Attorneys for Defendant*
        *Blackbaud, Inc.*