**UNREDACTED - FILED UNDER SEAL**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BLACKBAUD, INC., et al., <br><br> Defendants. | Civil Action No. 24-03993-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ACXIOM, LLC, et al., <br><br> Defendants. | Civil Action No. 24-04017-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., et al., <br><br> Defendants. | Civil Action No. 24-04073-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04077-HB |
| v. | |
| CARCO GROUP INC., et al., | |
| Defendants. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04095-HB |
| v. | |
| TWILIO, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04104-HB |
| v. | |
| 6SENSE INSIGHTS, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04106-HB |
| v. | |
| SEARCH QUARRY, LLC, et al., | |
| Defendants. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04110-HB |
| ENFORMION, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04113-HB |
| RED VIOLET, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04114-HB |
| RE/MAX, LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04168-HB |
| EPSILON DATA MANAGEMENT, LLC, et al., | |
| Defendants. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04182-HB |
| v. | |
| REMINE, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04217-HB |
| v. | |
| TELTECH SYSTEMS, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04230-HB |
| v. | |
| CORELOGIC, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04299-HB |
| v. | |
| SPOKEO, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04354-HB |
| v. | |
| TELNYX LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04392-HB |
| v. | |
| MYHERITAGE, LTD, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04442-HB |
| v. | |
| WILAND, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04770-HB |
| v. | |
| VALASSIS DIGITAL CORP., et al., | |
| Defendants. | |

| ATLAS DATA PRIVACY CORPORATION, et al., | |
|---|---|
| Plaintiffs, | |
| v. | Civil Action No. 24-04447-HB |
| ATDATA, LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04571-HB |
| PRECISELY HOLDINGS, LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 24-04850-HB |
| THE LIFETIME VALUE CO. LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 24-05334-HB |
| FIRST AMERICAN FINANCIAL CORPORATION et al., | |
| Defendants. | |

**DEFENDANTS' SUPPLEMENTAL BRIEF
IN OPPOSITION TO PLAINTIFFS' CONSOLIDATED MOTION TO REMAND**

**CARLTON FIELDS**

*/s/ Jorkeell Echeverria*
Jorkeell Echeverria
Michael T. Hensley
180 Park Avenue, Suite 106 Florham Park,
New Jersey 07932 Tel: 973.828.2613 Fax:
212.430.5501 MHensley@carltonfields.com
JEcheverria@carltonfields.com

**PARKER POE ADAMS & BERNSTEIN
LLP**

Sarah F. Hutchins (*pro hac vice*)
Corri A. Hopkins (*pro hac vice*)
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Tel: 704.335.6639
sarahhutchins@parkerpoe.com
corrihopkins@parkerpoe.com

*Attorneys for Defendant Blackbaud, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................x

INTRODUCTION ............................................................................2

ARGUMENT ................................................................................3

    I.    Under CAFA, Interstate Class Actions Should Be Heard in Federal Court. ................................................................................3

    II.    This Is a Class Action "in Disguise" under CAFA. ............................6

    III.    This Case Filed Under Daniel's Law Is a Putative Class Action "In Substance" Under CAFA. ................................................................10

        A.    Commonality, Typicality, and Adequacy. ................................13

        B.    Numerosity. ................................................................20

        C.    Ascertainability. ..........................................................22

        D.    Class Notice. ..............................................................23

        E.    Available Relief. ..........................................................26

        F.    Plaintiffs' Contrary Arguments Are Unavailing.......................26

CONCLUSION ..............................................................................27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*,
   731 F.3d 740 (7th Cir. 2013) ...................................................................6

*Atlas Data Privacy Corp. et al v. Blackbaud Inc., et al*,
   No. 1:24-cv-03993-HB (D.N.J) (DE 40-2 at 2-25) ...........................2

*Atlas Data Privacy Corp., et al. v. MyHeritage Ltd., et al.*,
   Case No. 24-cv-4392 (HB) ...................................................................5

*Atlas Data Privacy Corporation, et al. v. Carco Group, Inc., et al.*,
   No. 24-04077 (HB) ........................................................................1, 28

*Badeaux v. Goodell*,
   358 F. Supp. 3d 562 (E.D. La. 2019)...............................................11, 22

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) .................................................................17

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014)...........................................................................3, 4

*Dukich v. IKEA US Retail LLC*,
   343 F.R.D. 296 (E.D. Pa. 2022).......................................................5, 23

*Erie Ins. Exch. by Stephenson v. Erie Indem. Co.*,
   68 F.4th 815 (3d Cir. 2023) ........................................................*passim*

*Erie Ins. Exch. v. Erie Indem. Co.*,
   722 F.3d 154 (3d Cir. 2013) .......................................................*passim*

*Espenscheid v. DirectSat USA, LLC*,
   688 F.3d 872 (7th Cir. 2012) .........................................................17, 18

*In re Fine Paper Litig. State of Wash.*,
   632 F.2d 1081 (3d Cir. 1980) ............................................................17

*U.S. ex rel. Gebert v. Transp. Admin. Servs.*,
   260 F.3d 909 (8th Cir. 2001) ............................................................16

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147, 102 S. Ct. 2364 (1982)......................................................14, 15, 17

*Judon v. Travelers Prop. Cas. Co. of Am.*,
  773 F.3d 495 (3d Cir. 2014) ...............................................................................4

*Kite v. Dir., Div. of Tax'n*,
  29 N.J. Tax 75 (2016), *aff'd*, 453 N.J. Super. 146, 180 A.3d 725
  (App. Div. 2018)................................................................................................16

*Massachusetts v. Exxon Mobil Corp.*,
  462 F. Supp. 3d 31 (D. Mass. 2020)..................................................................10

*W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
  646 F.3d 169 (4th Cir. 2011) .............................................................................11

*Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*,
  954 F.3d 831 (6th Cir. 2020) .............................................................................11

*Minnesota by Ellison v. Am. Petroleum Inst.*,
  63 F.4th 703 (8th Cir. 2023) ..............................................................................13

*In re Modafinil Antitrust Litig.*,
  837 F.3d 238 (3d Cir. 2016), *as amended* (Sept. 29, 2016) ..................15, 21, 22

*Murray v. Crystex Composites, LLC*,
  618 F. Supp. 2d 352 (D.N.J. 2009), *aff'd,* 378 F. App'x 159 (3d
  Cir. 2010) ..........................................................................................................24

*Pac. Coast Fed'n of Fishermen's Associations, Inc. v. Chevron Corp.*,
  No. 18-CV-07477, 2023 WL 7299195 (N.D. Cal. Nov. 1, 2023)...............12, 13

*Portillo v. Nat'l Freight, Inc.*,
  169 F. Supp. 3d 585 (D.N.J. 2016).....................................................................4

*Purdue Pharma L.P. v. Kentucky*,
  704 F.3d 208 (2d Cir. 2013) .........................................................11, 14, 18, 20

*Ricketti v. Barry*,
  775 F.3d 611 (3d Cir. 2015) ..............................................................................24

*U.S. ex rel. Rockefeller v. Westinghouse Elec. Co.*,
    274 F. Supp. 2d 10 (D.D.C. 2003), *aff'd sub nom. Rockefeller ex rel. U.S. v. Washington TRU Sols. LLC*, No. 03-7120, 2004 WL 180264 (D.C. Cir. Jan. 21, 2004).......................................................16

*Rogers v. Rushmore Loan Mgmt. Servs., LLC*,
    No. CV 20-13084, 2021 WL 1921586 (D.N.J. May 13, 2021).........................25

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
    15 F.4th 259 (3d Cir. 2021) ......................................................................5

*Salton City Area Property Owners Association v. M. Penn Phillips Co.*,
    75 Cal. App. 3d 184 (1977) ...................................................................12

*Song v. Charter Commc'ns, Inc.*,
    No. 17CV325, 2017 WL 1149286 (S.D. Cal. Mar. 28, 2017) ...............12, 22

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269, 128 S. Ct. 2531 (2008)...............................................16, 17, 18

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588, 595 (2013) ........................................................................6

*Superintendent & Trustees of Pub. Sch. in Trenton v. Heath*,
    15 N.J. Eq. 22 (Ch. 1862) ......................................................................15

*Taylor v. Sturgell*,
    553 U.S. 880, 128 S. Ct. 2161 (2008)......................................................16

*Underwood v. Maloney*,
    256 F.3d 334, 337 (3d Cir. 1958) ............................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541 (2011)......................................................14

*Wallach v. Eaton Corp.*,
    837 F.3d 356 (3d Cir. 2016) ...................................................................15

*Williams v. Employers Mut. Cas. Co.*,
    845 F.3d 891 (8th Cir. 2017) ...............................................................6, 27

*Williams-Hopkins v. MedWell, LLC*,
    No. A-0273-21, 2024 WL 1476821 (N.J. Super. Ct. App. Div. Apr.
    5, 2024) ..................................................................................................25

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1332(d) ...............................*passim*

Daniel's Law ......................................................................................*passim*

False Claims Act ...................................................................................15,16

**Other Authorities**

Fed. R. Civ. P. 23(a)(1) .......................................................................14, 20

Fed. R. Civ. P. 23(a)(2) ..............................................................................12

Fed. R. Civ. P. 23(b)(3) .........................................................................5, 26

Fed. R. Civ. P. 23(c)(2) ..............................................................................23

Fed. R. Civ. P. 23(c)-(d) ...............................................................................5

Fed. R. Civ. P. 23(d)(1)(B)(i)-(ii) ..............................................................23

N.J. Ct. R. 4:28-1(a)(ii) ..............................................................................21

Pennsylvania Rules of Civil Procedure Rule 2152......................7, 26, 27

S. Rep. No. 109-14 (2005) .......................................................................9, 10

## UNREDACTED – FILED UNDER SEAL

The above-captioned defendants (collectively, "Defendants") have joined the Remand Defendants' Consolidated Brief in Opposition ("Joint Brief") to Plaintiffs' Consolidated Motion to Remand ("Remand Motion").[1]  In the Joint Brief, the Remand Defendants explained that the Court should disregard Plaintiff Atlas Data Privacy Corporation's ("Atlas") citizenship for the purposes of determining federal jurisdiction because Atlas is not a real party in interest, and that federal jurisdiction is also proper, regardless of Atlas's citizenship, because these cases are "mass actions" under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

If the Court determines that federal jurisdiction is not proper on any basis set forth in the Joint Brief, Defendants respectfully submit that this Supplemental Brief in Opposition ("Supplemental Brief") to Plaintiffs' Remand Motion provides an alternative basis to find that federal jurisdiction over these cases is proper under the "class action" provisions of CAFA.

---

[1] The Remand Defendants' Joint Brief was submitted in *Atlas Data Privacy Corporation, et al. v. Carco Group, Inc., et al.*, No. 24-04077 (HB) at DE 53. Defendants therefore incorporate by reference and adopt the Joint Brief in full, including all exhibits to the Joint Brief and to the Declaration of Angelo A. Stio III (DE 54) ("Stio Decl."), and specifically including (but not limited to) the Factual and Procedural Background in Section II.  The arguments and bases for removal asserted herein are advanced in the alternative to the arguments in the Joint Brief.

1

## INTRODUCTION

CAFA was designed for cases like these. Each Complaint[2] seeks to adjudicate the claims of approximately 19,000 people at once.[3] In doing so, this litigation triggers federal jurisdiction under two independently sufficient pillars of CAFA. First, as set forth in the Joint Brief, these cases are "mass actions" under CAFA because Atlas purports to sue as the assignee for claims of approximately 19,000 Assignors. Second, as set forth herein, the Daniel's Law Complaints plead that these cases are "class actions" under CAFA.[4]

---

[2] For ease of reference, all Complaint pin cites [hereinafter, "Compl."] refer to the Complaint filed in *Atlas Data Privacy Corp. et al v. Blackbaud Inc., et al*, No. 1:24-cv-03993-HB (D.N.J) (DE 40-2 at 2-25), unless otherwise noted. All other Complaints against the Remand Defendants are materially the same for the purposes of this Supplemental Brief.

[3] The exact numbers of Assignors and Individual Plaintiffs vary by case, but each complaint includes *approximately* 19,000 to 20,000 Assignors and several Individual Plaintiffs. For ease of reference, this brief refers to 19,251 Assignors from the *Blackbaud* Complaint. The differences in numbers of alleged Assignors and Individual Plaintiffs among the Complaints are not material to this Supplemental Brief. By using identifiers such as "Assignors" and "Covered Persons" for convenience, Defendants do not concede that the legal definition of any such term has been satisfied. Defendants also do not concede that Atlas is a proper assignee, or that *any* rights were properly assigned to Atlas, and expressly reserve the right to contest the same.

[4] Defendants accept as true the factual allegations in the Complaint *solely* for the purpose of establishing federal jurisdiction. Defendants reserve all rights to dispute and to assert defenses to the allegations in the Complaint in the future.

Specifically, as to CAFA's "class action" provisions, the Remand Motion largely concedes that all elements of federal jurisdiction are met, except Plaintiffs complain that "none of these cases were filed in state court under any rule or statute similar to Rule 23's class action procedure." Pls.' Br. at 23.[5]  As explained below, as Plaintiffs have pled the Daniel's Law Complaints, these cases are "class actions" under CAFA because (1) they are "class actions in disguise" and, alternatively (2) they are "filed under" Daniel's Law, which is "similar to" Rule 23 in every relevant respect.  Plaintiffs' objections are unfounded; this case should remain before this Court.[6]

## ARGUMENT

### I.    Under CAFA, Interstate Class Actions Should Be Heard in Federal Court.

"Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citation omitted).  Congress has advised that "CAFA's 'provisions should be read broadly, with a *strong preference* that interstate class actions should be heard

---

[5] Citations to Plaintiffs' Brief in Support of the Remand Motion are to the brief page numbers for consistency.

[6] Defendants dispute that Plaintiffs have actually *satisfied* any element or requirement of Rule 23 for class certification purposes, and expressly reserve the right to contest each such element and requirement in the future. If these cases are not "mass actions," they remain—if anything—*putative* class actions under CAFA.

in a federal court if properly removed by any defendant.'" *Id.* (quoting S. Rep. No. 109–14, p. 43 (2005)) (emphasis added); *Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d 585, 589 (D.N.J. 2016) ("[CAFA] expressed a clear preference for qualifying class actions to be entertained in federal forums.").

Plaintiffs acknowledge "CAFA's less stringent standard" for federal jurisdiction, but argue that these cases are not "class actions" under CAFA because they were not filed under a state rule or statute similar to federal Rule 23.  Pls.' Br. at 23.[7]  This argument is wrong, and the Court should deny the motion to remand.

The Court has jurisdiction over this case under the "class action" provisions of CAFA. CAFA defines "the term 'class action'" to mean "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]"  28 U.S.C. § 1332(d)(1)(B).

Federal Rule 23, and case law interpreting it, impose several requirements on prospective class action litigants.   A putative class action must satisfy four

---

[7] "CAFA confers on district courts" jurisdiction over cases "in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ('numerosity requirement)." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (citation omitted).  Plaintiffs do not contest these elements.

substantive requirements under Rule 23(a), "known as **numerosity**, **commonality**, **typicality**, and **adequacy of representation**." *Dukich v. IKEA US Retail LLC*, 343 F.R.D. 296, 304 (E.D. Pa. 2022) (emphasis added).  It must also fulfill key "procedural safeguards of Rule 23," such as **ascertainability**, *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 265 (3d Cir. 2021), and **class notice**, Fed. R. Civ. P. 23(c)-(d), before the class can recover **monetary** (Fed. R. Civ. P. 23(b)(3)) or **equitable relief** (*id.* at 23(b)(1)-(2)).

Plaintiffs contend that "this Court need only ask whether Plaintiffs filed this action under" a law like Rule 23, and then conclude that "[t]he inquiry ends there." Pls.' Br. at 26.  But that is not the test in the Third Circuit.  Rather, "[i]f a complaint does not satisfy CAFA's jurisdictional requirements on its face," the court "must cut through any pleading artifice to identify whether the case is in substance an interstate class action."[8] *Erie Ins. Exch. by Stephenson v. Erie Indem. Co.*, 68 F.4th 815, 819 (3d Cir. 2023) ["*Erie II*"].  And as the Supreme Court cautioned, "courts must be careful not to 'exalt form over substance' when determining whether a case satisfies

---

[8] The same applies in the international context where, as in *Atlas Data Privacy Corp., et al. v. MyHeritage Ltd., et al.*, Case No. 24-cv-4392 (HB), all Plaintiffs are citizens of New Jersey but the only proper defendant is a citizen of a foreign nation, Israel. 28 U.S.C. § 1332(d)(2)(C).

CAFA's jurisdictional requirements." *Id.* at 819-20 (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)).

## II.   <u>This Is a Class Action "in Disguise" under CAFA.</u>

These cases were properly removed under the "class action" provisions of CAFA. In their Remand Motion, Plaintiffs do not dispute that the basic requirements of CAFA removal—minimum diversity, numerosity, amount in controversy—have been pled, or contend that any exception applies. Pls.' Br. at 23–26. Instead, Plaintiffs argue that these cases were not "filed under a State analogue to Rule 23[.]" Pls.' Br. at 23. But, the "analogous state law" need not be explicitly named in the complaint to count as a class action under CAFA, otherwise "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017). *See also Addison Automatics, Inc. v. Hartford Cas. Ins. Co.,* 731 F.3d 740, 742-43 (7th Cir. 2013) (noting that the case was "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit" and denying remand under CAFA where plaintiff, an assignee of class rights, omitted reference to Rule 23 in the pleadings to avoid federal jurisdiction).

Plaintiffs contend that the Third Circuit's opinion in *Erie II* prevents this Court from considering whether they artfully pleaded around a class action. Pls.' Br. at

24–26.  But that case is distinguishable.  There, the question was "whether the Pennsylvania *procedural* rules governing [the] claim [we]re similar to Rule 23." *Erie II*, 68 F.4th at 820 (emphasis added).  Plaintiffs brought suit, in part, under Rule 2152 of the Pennsylvania Rules of Civil Procedure, which authorizes "[a]n action prosecuted by an association . . . in the name of a member or members thereof as trustees ad litem for such association."  Pa. R. Civ. P. 2152.  In *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154 (3d Cir. 2013) ["*Erie I*"], a prior panel of the Third Circuit had already compared the procedural aspects of that procedural rule to Rule 23 and determined that it was not a close enough match to invoke CAFA jurisdiction. *Erie II*, 68 F.4th at 819 (explaining that it was bound by the prior ruling that Pennsylvania Rule 2152 was not "similar" to Rule 23).  No amount of "piercing the pleading" would change the analysis of how those two procedural mechanisms compare, regardless of whether the plaintiffs were attempting to avoid the class action mechanism.

Here, in contrast, Plaintiffs attempted to avoid CAFA jurisdiction *factually* rather than through procedural means.  Indeed, they did not explicitly file their complaint under any particular New Jersey procedural mechanism.  Electing not to obtain assignments from the individual named plaintiffs, Atlas instead obtained partial assignments from nearly 20,000 alleged Covered Persons in order to avoid filing a class action and allowing Defendants to avail themselves of the procedural

7

protections of CAFA.  For that reason, the Court is permitted to "look beyond the four corners of [the] complaint" to consider whether this is a *de facto* class action, albeit currently without any of the due-process safeguards for those nearly 20,000 Covered Persons sitting in the wings.  *See id.* at 820 (explaining the difference between a legal requirement and a "a quintessentially factual inquiry").

And when looking at and beyond the complaint, it is plain that this is a class action in disguise.  The Complaints that were filed in these matters allege that Atlas is effectively asserting claims on behalf of approximately 19,000 assignors (the "Assignors").  *See, e.g.*, Compl. ¶ 26; Joint Brief at 4.  The nature of the relief sought makes clear that these claims are pursued for the benefit of approximately 19,000 Assignors, as all of the injunctive relief, by definition, could run only to the Assignors, and a substantial portion of the requested monetary relief runs to them as well.  *See* Joint Brief at 42; *see also* Compl. ¶ 36 ("With this lawsuit, Atlas seeks to force compliance with Daniel's Law for those Covered Persons."); Docket Entry 40-2 (Plaintiffs' Motion for Consolidation) at 30 (stating that the actions were "filed to enforce the rights of approximately 20,000 law enforcement officers under Daniel's Law").  The fact that Atlas is pursuing the relief on behalf of the Assignors cannot seriously be disputed by Atlas, as Atlas's Service Terms confirm the express purpose of the assignments is to aggregate individual claims.  Indeed, the stated purpose of the assignments makes plain that Atlas is using the assignments as an end-run around

the class action mechanism, for which Congress expressly intended to facilitate litigation before a federal court. *See* S. Rep. No. 109–14, p. 43 (2005).

Plaintiffs (and the Assignors) pleaded a CAFA class action in every respect but name. In these circumstances—where the underlying documents confirm the aggregation of claims—both *Erie* cases are distinguishable and Plaintiffs' reliance on *Erie* is misplaced.[9] Their manipulation of these claims to undermine Defendants' right to have interstate class actions removable to and litigated in federal court under CAFA should be seen for what it is and rejected. This is a class action that is removable pursuant to CAFA.

---

[9] In *Erie I*, the Third Circuit affirmed the remand of a case filed by an exchange that was not brought pursuant to a rule similar to Rule 23 where the defendant had "not pointed to any rule that would even permit suit by an exchange through its members to be brought as a class action" under state law. 722 F.3d at 160 (citation omitted). In addition, the rights sought to be vindicated belonged to the exchange, not the members, who were merely indirect beneficiaries, and the exchange had long existed and had not been formed solely for the purposes of the litigation. *Id.* at 161-162. By contrast, Atlas did not obtain the partial assignments pursuant to which it brought these lawsuits until the day before it commenced this litigation and obtained those assignments for purposes of this litigation; it is seeking to vindicate the rights of thousands of individuals in which it otherwise would have had no interest but for those assignments; and, unlike the members of the exchange in *Erie I*, the Assignors' claims could have been vindicated here in a class action under Rule 23 or an equivalent rule under New Jersey law.

9

### III. This Case Filed Under Daniel's Law Is a Putative Class Action "In Substance" Under CAFA.

Alternatively, the allegations in the Complaints reflect that Daniel's Law—as Plaintiffs have used it here—is so "similar to" Rule 23 that these cases should be treated as "class actions" for CAFA purposes.

A "class action" under CAFA is "any civil action filed under" federal Rule 23 or a "similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons[.]" 28 U.S.C. § 1332(d)(1)(B).  By its text, CAFA "does not disclose the criteria for evaluating when a state statute is 'similar' to Rule 23." *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 48 (D. Mass. 2020).  Congress has been clear, however, that courts should interpret CAFA "liberally," and in a manner ensuring that its "application *should not be confined solely to lawsuits that are labeled 'class actions'* by the named plaintiff or the state rulemaking authority." S. Rep. No. 109-14, at 35 (2005) (emphasis added).[10]  Thus, appellate courts generally agree that "[a] state statute or rule is 'similar' to [Rule] 23 if it *closely resembles* Rule 23 or is like Rule 23 *in substance*

---

[10] At its inception, CAFA governed class actions in states that did not have class action rules. S. Rep. 109-14, 13-14, 2005 U.S.C.C.A.N. 3, 14 ("(Two states, Mississippi and West Virginia, do not have rules or statutes authorizing class actions.)").  Thus, Congress intended CAFA to apply to cases originating in states that did not even *have* a state class action rule to cite, but where the complaint *looked* like class action "in substance."

*or in essentials*." *W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174 (4th Cir. 2011) (emphasis added); *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834–35 (6th Cir. 2020) (same).[11]

The Third Circuit has asked whether the applicable state law contains *some* of the "defining characteristics of Rule 23." *Erie I*, 722 F.3d at 158–59. Importantly, however, "a similar state statute or rule need not contain ***all*** of the other conditions and administrative aspects of Rule 23." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 217 (2d Cir. 2013) (quoting *McGraw*, 646 F.3d at 175). Instead, the analysis focuses on the representative nature of the suit—namely, that the state law, "at a minimum, provide[s] ***a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf but also on behalf of all others*** in the class." *Id.* (emphasis added).

For example, federal courts have found a state law "similar to" Rule 23 where the complaint's factual allegations reveal that the suit seeks to benefit a group not before the court. *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 568 (E.D. La. 2019) (finding the complaint, although captioned "Petition for Writ of Mandamus," was "clearly a class action" where the claims were "asserted by the named Plaintiffs

---

[11] *Nessel*, 954 F.3d at 835 ("Merriam-Webster defines 'similar' as 'having characteristics in common' or 'alike in substance or essentials.'")).

individually and on behalf of others."); *Song v. Charter Commc'ns, Inc.*, No. 17CV325, 2017 WL 1149286, at *1 *and* n.1 (S.D. Cal. Mar. 28, 2017) (finding a "class action" where plaintiff "brought the lawsuit . . . for the benefit of millions of California consumers," even "[t]hough he did not style his complaint as a class action[.]").

In practice, district courts compare the "similar" state statute, and the case law governing it, to Rule 23 and its interpretive case law. For example, in *Pac. Coast Fed'n of Fishermen's Associations, Inc. v. Chevron Corp.*, No. 18-CV-07477, 2023 WL 7299195, at *2 (N.D. Cal. Nov. 1, 2023), the plaintiff-association brought a lawsuit on behalf of its absent members. The defendant removed, arguing that the complaint was subject to California's section 382, a state procedural rule. The court compared Section 382 to Rule 23, in light of the case law governing each, and found that Section 382 was "subject to many Rule 23–like requirements." *See, e.g., id.* at *1 ("Common questions of law and fact must predominate over individual issues. *Compare Salton City Area Property Owners Association v. M. Penn Phillips Co.*, 75 Cal. App. 3d 184, 189–90 (1977), *with* Fed. R. Civ. P. 23(a)(2); *id.* (b)(3)."). Thus, the court held that "removal under CAFA was proper." *Pac. Coast Fed'n*, 2023 WL 7299195 at *1.

By contrast, the Third Circuit found a state procedural rule was not "similar to" Rule 23 where a plaintiff-unincorporated association sued on behalf of its

12

members (but not on its own behalf), and the underlying state rule "contain[ed] ***none*** of the defining characteristics of Rule 23." *Erie I*, 722 F.3d at 158-59 (emphasis added); *see also Erie II*, 68 F.4th at 819 (following *Erie I* as to the same Pennsylvania rule).  Courts reach the same conclusions in *parens patriae*-like suits. *See, e.g., Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 716 (8th Cir. 2023) ("[S]tate-led civil enforcement actions [] don't quality as 'class actions'" under a Rule 23-analogue analysis.) (collecting cases).

Plaintiffs contend that, under *Erie II*, a Rule-23 analogue must be identified, and that this omission "fatally dooms Defendants' argument."  Pls.' Br. at 25.  But Plaintiffs *did* file this suit "under a State analogue to Rule 23"—Daniel's Law, a statute that is "similar to" Rule 23 in all critical respects.  28 U.S.C. § 1332(d)(1)(B).

Indeed, Rule 23 is similar to Daniel's Law on every axis that matters.  In both its express language and as applied in the Complaint, Daniel's Law includes many of the "defining characteristics of Rule 23," such as (i) commonality, typicality, and adequacy; (ii) numerosity; (iii) ascertainability; (iv) class notice; and (v) available relief.  Because Daniel's Law is "subject to many Rule 23-like requirements," *Pac. Coast Fed'n*, 2023 WL 7299195, at *1, this case should be treated as a class action for CAFA purposes.

## A.    Commonality, Typicality, and Adequacy.

The *sine qua non* of the class action mechanism is that named plaintiffs "may sue or be sued as representative parties on behalf of all [absent class] members[.]" Fed. R. Civ. P. 23(a).  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49, 131 S. Ct. 2541, 2550–51 (2011), by imposing the requirements of commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(2)-(4).[12]  In practice, these three requirements "tend to merge[.]" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158, n.13, 102 S. Ct. 2364, 2371 (1982).  When considered together, they "serve as guideposts for determining … whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158, n.13.

Ensuring that a class representative can "fairly and adequately protect[]" absent class members is the animating principle of the Rule 23-analogue analysis. *Id.*; *see also Purdue Pharma*, 704 F.3d at 217 (describing representative requirements of a Rule 23 analogue).  As shown below, the assignment provision of

---

[12] A class action must include "questions of law or fact common to the class" (commonality); and "representative parties" with claims or defenses that are "typical of the claims or defenses of the class" (typicality) and who "will fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a)(2)-(4).

Daniel's Law imposes upon assignees similar duties to class representatives. Thus, the assignment provisions of Daniel's Law are "similar to" the commonality, typicality, and adequacy provisions of Rule 23(a) in every relevant respect.[13]

(1)    Partial assignees are analogous to class representatives.

In New Jersey and in federal court, "[t]here is a distinction at law between a partial and entire assignment." *Superintendent & Trustees of Pub. Sch. in Trenton v. Heath*, 15 N.J. Eq. 22, 24 (Ch. 1862). Specifically, "[t]he distinguishing feature of a partial assignment is a manifestation of intention to make an immediate transfer of part but not all of the assignor's right[.]" *Wallach v. Eaton Corp.*, 837 F.3d 356, 368 (3d Cir. 2016) (quoting Restatement (Second) of Contracts § 326 (1981)); *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251 (3d Cir. 2016), *as amended* (Sept. 29, 2016) (recognizing a partial assignment as "a fractional part of a single and entire right").

Partial or incomplete assignments can arise by statute. For example, the False Claims Act ("FCA") "partially assigns the United States' damage claims to a relator," and "the partial assignment to a relator is conditioned on the United States receiving at least seventy percent of any recovery obtained from the FCA violator."

---

[13] As explained above, Defendants reserve the right to dispute that any requirement of Rule 23 has been *satisfied*. This includes, without limitation, disputing any suggestion that Atlas could "fairly and adequately protect[]" the Assignors, *Falcon*, 457 U.S. at 158, n.13, for all of the reasons set forth in the Joint Brief and more.

*U.S. ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 18 (D.D.C. 2003), *aff'd sub nom. Rockefeller ex rel. U.S. v. Washington TRU Sols. LLC*, No. 03-7120, 2004 WL 180264 (D.C. Cir. Jan. 21, 2004)); *Kite v. Dir., Div. of Tax'n*, 29 N.J. Tax 75, 84–85 (2016), *aff'd*, 453 N.J. Super. 146, 180 A.3d 725 (App. Div. 2018) ("[T]he FCA 'can reasonably be regarded as effecting a partial assignment of the Government's damages claim.'") (citation omitted); *see also U.S. ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 914 (8th Cir. 2001) (describing the FCA "framework of a partial-assignee/partial-assignor relationship").[14]

If an assignee sues on a split claim, the assignor can be bound by the resulting judgment. *See Taylor v. Sturgell*, 553 U.S. 880, 894, 128 S. Ct. 2161, 2172 (2008) (explaining "the rule against nonparty preclusion is subject to exceptions," including the assignor-assignee relationship). Thus, like a class representative, an assignee has an "'obligation' to the parties whose interests they vindicate through litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc*., 554 U.S. 269, 287–88, 128 S. Ct. 2531, 2543 (2008); *Taylor*, 553 U.S. at 900-01 (explaining that the "procedural

---

[14] In its Intervenor's Brief, the Attorney General of New Jersey analogized the "claim-assignment provision" of Daniel's Law to the *qui tam* provisions of the FCA, which "permit private citizens to assist in enforcement rights." *Atlas Data Privacy Corp. v. Lightbox*, No. 1:24-cv-04105-HB (DE 48 (Intervenor's Brief) at 81.

safeguards contained in [] Rule 23" are similar to "[a] party's representation of a nonparty," including in the assignment context).

Given their responsibilities to nonparties, courts have analogized the role of a partial assignee (owing obligations to absent assignors) to that of a class representative (owing obligations to absent class members). *See Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012) ("If a class is certified . . . , the named plaintiffs will be in effect partial assignees of the money awarded the class[.]"); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 103 (2d Cir. 2007) ("[There is] "nothing about the perils of claim assignment in the context of class membership and class representation that is qualitatively different from similar dangers that inhere in permitting the pursuit of assigned legal claims generally[.]"). In some cases, a partial assignee's "assigned claims are, by definition, identical to those of that class." *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1091 (3d Cir. 1980).

In sum, the commonality, typicality, and adequacy "guideposts" of Rule 23(a) mandate that a class representative must "fairly and adequately protect[]" the absent class members. *Falcon*, 457 U.S. at 158, n.13, just like a partial assignee must satisfy similar "'obligation[s]' to the parties whose interests they vindicate through litigation." *Sprint*, 554 U.S. at 287–88. Thus, the role of a partial assignee is, "in

17

effect," *Espenscheid*, 688 F.3d at 876, "similar to" that of a class representative under Rule 23.

> (2)    A proper Daniel's Law assignee is "similar to" a Rule 23 class representative.

Daniel's Law appears to authorize partial assignments. Specifically, subsection (d) defines an "Assignee" as "a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for a violation of [Daniel's Law]." N.J.S.A. 56:8-166.1(d). Subsection (b) allows "a covered person's assignee" to "bring a civil action in the Superior Court." N.J.S.A. 56:8-166.1(b).

After a *proper* assignment under Daniel's Law, the assignors retain an interest in an assigned claim, thereby imposing ongoing obligations on the assignee. *Sprint*, 554 U.S. at 280-81 (describing the assignors' "beneficial interest" in a claim assigned for collection); *see also* Joint Brief at Section III.A.2.a. Thus, like a class representative under Rule 23(a), and a proper assignee under Daniel's Law pleads claims on behalf of itself and its assignors. *Purdue Pharma*, 704 F.3d at 217 (requiring "a procedure by which a member of a class . . . can bring an action . . . on his own behalf . . . [and] on behalf of all others in the class.").

Atlas attempted to take advantage of that mechanism in this case.[15]   For example, Atlas purports to sue under its alleged "litigation rights."[16]  Pls.' Br. at 21. But Atlas also professes to sue on behalf of each of its Assignors:

- "The Atlas assignments are expressly authorized by Daniel's Law *as a mechanism to enforce a Covered Person's rights*."   Pls.' Br. at 10 (citing N.J.S.A. 56:8-166.1(b),(d)) (emphasis added).)

- "With this lawsuit, Atlas seeks to force compliance with Daniel's Law *for those Covered Persons*."  Compl., ¶ 36 (emphasis added).

- "[W]e are taking action as Atlas with all of these claims having been assigned to us and we are attempting to prosecute them all to achieve compliance and a just outcome for the folks involved."  Stio Decl., Ex. 1 at 191:24-192:3.

In the Service Terms, Atlas insists that it will "manage the prosecution and resolution" of litigation, and will "use good faith discretion in prosecuting and settling" the Assignors' claims.  (*See also* Stio Decl., Ex. 12 §§ 4(d)(iv),(e)(ii) (purporting to "use its good faith discretion to ensure" that "service fees" it incurs

---

[15] Atlas, however, is not a real party in interest in this case, as explained in the Joint Brief.

[16] In its pleadings, Atlas ties its right to sue Defendants to the statutory language of Daniel's Law: "*In accordance with Daniel's Law*, each of the Covered Persons has assigned their rights for claims *thereunder*" to Atlas.  Compl. ¶ 30 (emphasis added). Atlas appears to have attempted to expand that assignment language through the Service Terms.  Contractual rights, however, do not arise under *the statutory text* of Daniel's Law—the Rule-23 analogue.  Thus, any rights that might arise by contract have no bearing on whether Daniel's Law is "similar to" Rule 23.  Further, as demonstrated throughout the Joint Brief, any "litigation rights" that Atlas purports to have are that of a collection agent, because it is not a real party in interest.  Joint Brief § III.A.2.

are commercially reasonable); *see also id.* § 4(e)(ii) (promising to remit a percentage of proceeds to the Assignors). And use of the class action device cannot be a surprise to Atlas, because its Service Terms recognize that Covered Persons may have "the opportunity to participate . . . as putative class members in formal legal action(s)[.]" Stio Decl., Ex. 12 § 4(e)(i).

The question here is not whether Atlas is a *proper* class representative—*i.e.*, whether the elements of Rule 23(a) are *satisfied*—but whether Daniel's Law imposes requirements "similar to" those in Rule 23(a).[17] 28 U.S.C. § 1332(d)(1)(B). To that, Plaintiffs have no rejoinder. Thus, the assignment provisions of Daniel's Law "provide a procedure by which a member of a class" can sue "not only on his own behalf but also on behalf of all others in the class." *Purdue Pharma*, 704 F.3d at 217. This makes Daniel's Law inherently "similar to" Rule 23.

## B.    Numerosity.

Federal Rule 23's numerosity requirement is satisfied "when the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity analysis presents "a binary choice" between "a class action versus

---

[17] Defendants reserve the right to contest every class certification requirement in the future.

joinder of all interested parties." *In re Modafinil*, 837 F.3d at 253.[18]  When a complaint filed under Daniel's Law asserts the claims of approximately 19,000 Assignors, the Court should analyze Daniel's Law in light of that "binary choice."

Here, Atlas and the Assignors seek relief under Daniel's Law claims, yet the Assignors are not presently named parties to this case.  If this case does not proceed as a class action, Third Circuit and New Jersey law advise that the Assignors may need to be joined as parties.  *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251–52 (3d Cir. 2016), *as amended* (Sept. 29, 2016) (citing *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1091 (3d Cir. 1980)) (discussing that the right to be "free of successive and repeated suits" is "protected by the use of the joinder rules or the class action mechanism."); N.J. Ct. R. R. 4:28-1(a)(ii) (requiring party joinder where proceeding otherwise "may . . . leave any of the persons already parties subject to a substantial *risk of incurring double, multiple, or other inconsistent obligations*[.]")

This is an undesirable result, given that the purpose of Daniel's Law is to enhance the safety of covered persons.  To preserve the integrity of Daniel's Law in

---

[18] *In re Modafinil*, 837 F.3d at 249 (numerosity "calls for an inherently fact-based analysis").

the face of preclusion principles, then this case should be treated as a "class action" under CAFA, with an implicit numerosity requirement.[19]

When evaluating numerosity, the Third Circuit counseled district courts to look at "the ability and motivation" of the plaintiffs "to pursue their litigation via joinder," rather than via the class action mechanism. *In re Modafinil*, 837 F.3d at 253. Joinder may be "impracticable" if safety concerns could "hinder the ability and motivation of a party to appear as a named plaintiff." *Id.*, at 257, n. 20.

By reading a Rule 23 numerosity requirement into Daniel's Law, the Assignors would be treated as absent class members, and thus would avoid concerns about "appear[ing] as a named plaintiff." *Id.* This would effectuate the intent of Daniel's Law, while enforcing defendants' right "to be free of successive and repeated suits," *Id.*, at 251–52. Thus, when using Daniel's Law to litigate thousands of claims at once, as Atlas has done here, Daniel's Law *compels* a numerosity analysis like that in Rule 23(a).

## C. Ascertainability.

---

[19] This is not unprecedented. Courts have found federal jurisdiction under CAFA where plaintiffs sued on behalf of thousands or millions of absent parties, yet no underlying state law imposed a numerosity requirement. *See Song v. Charter Commc'ns, Inc.*, No. 17CV325, 2017 WL 1149286, at *1 (S.D. Cal. Mar. 28, 2017); *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 568 (E.D. La. 2019).

Before certifying a class under Rule 23, "the court must first determine whether the proposed class is ascertainable" by requiring "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Dukich v. IKEA US Retail LLC*, 343 F.R.D. 296, 304–05 (E.D. Pa. 2022).

Daniel's Law requires any assignment to be set forth "in writing" by the assignor and assignee. N.J.S.A. 56:8-166.1(d). Thus, a proper Daniel's Law assignee must be able to identify its assignor, and the "in writing" element of Daniel's Law necessarily imposes a "mechanism" for ascertaining the putative class members.

## D. Class Notice.

If a class is certified under Rule 23, notice must be sent to absent class members. Fed. R. Civ. P. 23(c)(2). Class notice must describe, among other things, "the nature of the action" and "the class claims, issues, or defenses" that may be resolved. *Id.* at 23(c)(2)(B)(i),(iii). In addition, Rule 23 allows a court to "issue orders" that mandate "notice to some or all class members of . . . any step in the action," including notice of "the proposed extent of the judgment[.]" Fed. R. Civ. P. 23(d)(1)(B)(i)-(ii).

By requiring proof of each assignment "in writing," N.J.S.A. 56:8-166.1(d), Daniel's Law also requires assignees to notify assignors of the rights they are giving

up.  In addition, when sending "takedown requests" to public entities, Daniel's Law requires each covered person to "***affirm in writing*** that the person understands that certain rights, duties, and obligations are affected as a result of the [takedown] request," such as the right to receive several types of "legal, promotional, or official notice[s]" and "***the ability to be notified of any class action suit or settlement***[.]" N.J.S.A. 47:1B-2(d)(1)-(6) (emphasis added).  To illustrate, Atlas contends, by virtue of assignments under Daniel's Law, that it has notice mechanisms in place.[20]

The due process protections inherent in the class notice-like provisions of Daniel's Law and Rule 23 demonstrate their similarities.  For example, whether in state or federal court, this suit would be subject to New Jersey's entire controversy doctrine ("ECD").  The ECD is "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015).  Importantly, the ECD "reaches more broadly than the 'same cause of action' requirement of traditional res judicata claim preclusion." *Murray v. Crystex Composites, LLC*, 618 F. Supp. 2d 352, 357 (D.N.J. 2009), *aff'd,* 378 F.

---

[20] Declaration of Sarah F. Hutchins ("Hutchins Decl."), Exhibit 1 at 242:16-25 ("Q. How are you updating or providing updates on the Atlas platform to assignors whose claims are part of litigation, do you have a place where you post updates about the litigation? A. As part of the services we provide to these covered persons, there is a web-based application that they can log into.  It shows them the status of takedown notices, as I mentioned before, the status of complaints that may have been filed, I believe.").

App'x 159 (3d Cir. 2010) (citations omitted).  Rather, it is "'an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit.'"  *Rogers v. Rushmore Loan Mgmt. Servs., LLC*, No. CV 20-13084, 2021 WL 1921586, at *2 (D.N.J. May 13, 2021) (citation omitted).  The ECD has been applied to bar subsequent claims related to an earlier class action.  *Williams-Hopkins v. MedWell, LLC*, No. A-0273-21, 2024 WL 1476821, at *14 (N.J. Super. Ct. App. Div. Apr. 5, 2024).

The instant case highlights the similarities in the notice protections of Rule 23 and Daniel's Law.  Here, Atlas purports to issue a separate assignment for each piece of protected information.[21]  Suppose a covered person sent one takedown request for her home address *and* phone number to a business, but Atlas only chose to assign and litigate the address claim, not the phone number.  Both the address and phone number requests "stem[] from" the same underlying facts, *Rushmore*, 2021 WL 1921586, at *2, and thus the ECD would bar any later suit about the phone number.

---

[21] Hutchins Decl., Exhibit 1 at 224:18-225:12 ("A. [A]ssignment confirmations are sent per piece of personal information, either a home address or a home phone number, so . . . one covered person could potentially receive more than one assignment confirmation. . . . Q. Okay. So take — let's make it up.  Jane Smith is an assignor and she gives her home phone number and she gives her home address.  There would be two separate assignment confirmations just to Jane Smith?  A.  In that instance that you have described, Jane Smith could receive two different assignment confirmations, one covering her home phone number and her telephone number and one covering her home address, that's right.").

The same would be true if a covered person assigned rights to Atlas for both pieces of information, but Atlas only brought suit on the address claim. *See* Stio Decl., Ex. 1 at 190:10-11 ("[A.] There are claims that have been assigned that are not part of these lawsuits."). Any later suit by Atlas about the phone number would be barred under the ECD, and the Assignor could not receive any statutory relief. The notice provision of Daniel's Law and Rule 23 would ensure that covered persons receive notice of the claims they have given up, before it is too late.

## E. Available Relief.

Under Daniel's Law, a successful plaintiff can recover monetary damages, N.J.S.A. 56:8-166.1(c)(1)-(2), attorneys' fees, *id.* at (c)(3), and equitable relief, *id.* at (c)(4). Similarly, under Rule 23, a successful class member may be able to recover monetary damages, Fed. R. Civ. P. 23(b)(3), attorneys' fees, *id.* at 23(h), or injunctive relief, *id.* at 23(b)(2).

## F. Plaintiffs' Contrary Arguments Are Unavailing.

Plaintiffs point to *Erie I* and *II* for the flawed proposition that CAFA jurisdiction does not apply here. But the state-law analogue in *Erie I* and *II* was categorically different from Daniel's Law. Specifically, the law at issue in both *Erie* cases *expressly* prohibited class actions under Pennsylvania law. In *Erie I*, the Third Circuit found the Pennsylvania law alleged in the complaint (Rule 2152) "merely authorize[d] suits by representatives on behalf of an unincorporated association."

*Erie I,* 722 F.3d at 159 (emphasis omitted).  Not only did Rule 2152 "contain[] *none* of the defining characteristics of Rule 23," *id.* at 158-59 (emphasis added), but also Pennsylvania precedent mandated that suits "such as those contemplated by Rule 2152[] may *not* be brought as a class action."  *Id.* at 159 (citing *Underwood v. Maloney,* 256 F.3d 334, 337 (3d Cir. 1958)).  *Erie II*, relying on that same Pennsylvania rule, merely affirmed the same result.  *Erie II*, 68 F.4th at 819 ("[W]e are bound to follow *Erie Insurance I.*").

Here, by contrast, Daniel's Law contains *many* "defining characteristics of Rule 23," and *no* court (much less the Third Circuit) has held that a suit under Daniel's Law "may *not* be brought by a class action." *Erie I,* 722 F.3d at 159.  Thus, Plaintiffs' Motion offers *no* argument that Daniel's Law deviates from *Erie*'s state-law analogue framework.

## CONCLUSION

In conclusion, there is little daylight between the claims in Plaintiffs' Complaint and a "class action" under CAFA.  Conclusions aside, Plaintiffs offer no substantive argument to the contrary.  Given the similarities between a putative class action and the allegations pled in the Daniel's Law Complaints, each suit "resemble[s] a purported class action," and "should be considered [a] class action[] for the purpose of applying [CAFA's] provisions."  *Williams*, 845 F.3d at 901 (quoting S. Rep. No. 109-14, at 35 (2005)).

Dated: September 16, 2024

**CARLTON FIELDS**

*/s/ Michael T. Hensley*

Michael T. Hensley Jorkeell Echeverria 180 Park Avenue, Suite 106 Florham Park, New Jersey 07932 Tel: 973.828.2613 Fax: 212.430.5501 MHensley@carltonfields.com JEcheverria@carltonfields.com

**PARKER POE ADAMS & BERNSTEIN LLP**

Sarah F. Hutchins (*pro hac vice*)
Corri A. Hopkins (*pro hac vice*)
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Tel: 704.335.6639
sarahhutchins@parkerpoe.com
corrihopkins@parkerpoe.com

*Attorneys for Defendant Blackbaud, Inc.*

Dated: September 16, 2024

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

*/s/ Angelo A. Stio*

Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400, 301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: Angelo.Stio@troutman.com
    Melissa.Chuderewicz@troutman.com
    Stephanie.Jonaitis@troutman.com

*Attorneys for Acxiom LLC, AtData LLC, Carco Group Inc., CoreLogic, Inc.,*

*Enformion, LLC, Enformion Holdco Inc.,
Intellicorp Records, Inc., Red Violet, Inc.,
and Remine Inc.*

Dated: September 16, 2024          **DENTONS US LLP**

/s/ *Stephen M. Turner*
Stephen M. Turner, Esq.
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

Bety Javidzad, Esq. (*pro hac vice*)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 243-6115
Email: bety.javidzad@dentons.com

*Attorneys for Defendant Commercial Real
Estate Exchange, Inc.*

Dated: September 16, 2024          **KELLEY DRYE & WARREN LLP**

/s/ *Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti
Whitney M. Smith
Aaron J. Gold KELLEY DRYE &
WARREN LLC
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
agold@kelleydrye.com

29

*Counsel for Defendant RE/MAX, LLC*

Dated: September 16, 2024

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

*/s/ Camille Joanne Rosca*
Camille Joanne Rosca
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
Email: crosca@orrick.com

*Attorneys for Defendant Twilio, Inc.*

Dated: September 16, 2024

**CLARK HILL PLC**

*/s/ Myriah V. Jaworski*
Myriah V. Jaworski (*pro hac vice*)
Chirag H. Patel (*pro hac vice*)
Steven Richman, Esq.
210 Carnegie Center, Suite 102 Princeton, NJ 08540 (609) 785-2911
Email:      mjaworski@clarkhill.com
cpatel@clarkhill.com
srichman@clarkhill.com

*Attorneys for Defendant 6sense Insights, Inc.*

Dated: September 16, 2024

**CLARK HILL PLC**

*/s/ Myriah V. Jaworski*
Myriah V. Jaworski (*pro hac vice*)
Chirag H. Patel (*pro hac vice*)
Steven Richman, Esq.

30

210 Carnegie Center, Suite 102
Princeton, NJ 08540
(609) 785-2911
Email:      mjaworski@clarkhill.com
             cpatel@clarkhill.com
             srichman@clarkhill.com

*Attorneys for Defendant Search Quarry LLC*

Dated: September 16, 2024        **MCELROY, DEUTSCH,
MULVANEY, & CARPENTER, LLP**

*/s/ Jacquelyn Fradette*
Nicholas K. Lagemann
MCELROY, DEUTSCH,
MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 425-8210
NLagemann@mdmc-law.com

Jacquelyn Fradette (*pro hac vice*)
Alan Charles Raul (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8822
jfradette@sidley.com
araul@sidley.com

Tyler J. Domino (*pro hac vice*)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
tdomino@sidley.com

*Attorneys for Defendants MyHeritage Ltd.
and MyHeritage (USA), Inc.*

31

Dated: September 16, 2024          **DENTONS US LLP**

*/s/ Stephen M. Turner*
Stephen M. Turner, Esq.
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

Kristen C. Rodriguez, Esq. (admitted pro
hac vice)
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 398-5280
Email: kristen.rodriguez@dentons.com

*Attorneys for Defendant Wiland, Inc.*

Dated: September 16, 2024          **FAEGRE DRINKER BIDDLE &
REATH LLP**

*/s/ Ross A. Lewin*
Ross A. Lewin
Faegre Drinker Biddle & Reath LLP
105 College Road East
Princeton, New Jersey 08542

Kevin DeMaio
600 Campus Drive
Florham Park, New Jersey 07932
ross.lewin@faegredrinker.com
kevin.demaio@faegredrinker.com

**HARRISON LAW LLC**
Rachel B. Niewoehner *(pro hac vice)*
Katherine A.G. Sobiech *(pro hac vice)*

32

141 West Jackson Boulevard,
Suite 2055
Chicago, Illinois 60604
(312) 638-8776
*Attorneys for Defendants Epsilon Data Management, LLC, Conversant LLC, and Citrus Ad International, Inc.*

Dated: September 16, 2024

**CARLTON FIELDS, P.A.**

*/s/ Michael D. Margulies*
Michael D. Margulies (No. 030412008)
CARLTON FIELDS, P.A.
180 Park Avenue, Suite 106
Florham Park, NJ 07932
Telephone: (973) 828-2600
Email: mmargulies@carltonfields.com
*Attorneys for Defendant Teltech Systems, Inc. and Epic Applications, LLC*

Dated: September 16, 2024

**SILLS CUMMIS & GROSS P.C.**

*/s/ Joshua N. Howley*
Joshua N. Howley
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

Andrew J. Pincus*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

33

John Nadolenco
Daniel D. Queen
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright*
Jonathan D. Stahl*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com
*pro hac vice

*Attorneys for Defendant Spokeo, Inc.*

Dated: September 16, 2024           **McCARTER & ENGLISH, LLP**

                                    */s/ Scott S. Christie* .
                                    Scott S. Christie (ID: 37901989)
                                    Four Gateway Center
                                    100 Mulberry Street
                                    Newark, NJ 07102
                                    Telephone: (973) 622-4444
                                    Email: schristie@mccarter.com

                                    *Attorneys for Defendant Telnyx LLC*

Dated: September 16, 2024           **SAUL EWING LLP**

                                    */s/ William C. Baton*
                                    William C. Baton
                                    Sarah A. Sullivan
                                    Alexander L. Callo
                                    SAUL EWING LLP

34

One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com
alexander.callo@saul.com

**COOLEY LLP**
Matthew D. Brown (*pro hac vice*)
Bethany C. Lobo (*pro hac vice*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

*Attorneys for Defendants Valassis Digital
Corp. and Valassis Communications, Inc.*


Dated: September 16, 2024          **SAUL EWING LLP**

*/s/ William C. Baton*
William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com

**COOLEY LLP**
Matthew D. Brown (*pro hac vice*)
Bethany C. Lobo (*pro hac vice*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111

35

Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

*Attorneys for Defendants Precisely
Holdings, LLC, Precisely Software Inc., and
Precisely Software Ltd.*

Dated: September 16, 2024

**MCCARTER & ENGLISH LLP**

*/s/ Christopher A. Rojao*
Ryan A. Savercool
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
crojao@mccarter.com
rsavercool@mccarter.com

**HOGAN LOVELLS US LLP**
*/s/ Jon M. Talotta*
Jon M. Talotta (admitted pro hac vice)
8350 Broad Street (Boro Tower)
Tysons, VA 22102
Tel: 703.610.6100
jon.talotta@hoganlovells.com
David M. Cheifetz (admitted pro hac vice)
Elizabeth C. Milburn (pro hac vice to be
filed)
390 Madison Avenue
New York, New York 10017
Tel: 212.918.3000
david.cheifetz@hoganlovells.com
tina.milburn@hoganlovells.com

*Attorneys for Defendants in 1:24-cv-4850-
HB, The Lifetime Value Co. LLC,
BeenVerified, LLC, NeighborWho LLC,
The NumberGuru, LLC,*

36

*PeopleLooker LLC, PeopleSmart LLC, Ownerly, LLC*

Dated: September 16, 2024

**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**

*/s/ Alexandra S. Jacobs*
Alexandra S. Jacobs
John Papianou
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
856.488.7746
ajacobs@mmwr.com
jpapianou@mmwr.com

**HUDSON COOK LLP**
Rebecca E. Kuehn (pro hac vice forthcoming)
Robert D. Tilley (pro hac vice forthcoming)
Jason F. Esteves (pro hac vice forthcoming)
1909 K Street, NW, 4th Floor
Washington, DC 20006
202.327.9710 / 202.327.9711
rkuehn@hudco.com
rtilley@hudco.com
jesteves@hudco.com

*Attorneys for Defendant, First American Financial Corporation*